183720 United States of America v. Philroy Johnson Oral argument not to exceed 15 minutes per side Mr. Coyle for the defendant appellant Good afternoon. May it please the court Scott Coyle of Squire Patton Boggs on behalf of the appellant in this case Mr. Philroy Johnson. With the court's permission I'd like to reserve three minutes for rebuttal. This case illustrates the need for meaningful appellate review of upward variances under an advisory guideline system. The district judge in this case imposed an above guidelines statutory maximum 60 month sentence on Mr. Johnson even though he fully cooperated on the night of his arrest he accepted responsibility for his actions and he has absolutely no conduct. In doing so the court erased meaningful distinctions between Mr. Johnson and more serious offenders who by definition cannot receive a lengthier sentence for this particular offense. This court is not hesitated to vacate upward variances in similar circumstances most notably only two months ago the case that we submitted a 28 J letter about in United States v. Warren. This court in fact vacated an upward variance imposed by the same district judge in this case and the facts in that case were similar to this one. Like Mr. Johnson, Mr. Warren pled guilty to a firearms offense. The probation office did not find prior firearms offenses did Warren have. He had several prior offenses. There were firearms offenses in fact there were firearms offenses plus shooting the firearm which is one of the things that distinguishes this case from Warren. Mr. Johnson did have four prior firearms offenses but I think it's important to note that Mr. Johnson did not have any offense for the use of a firearm. In fact there was no history of violent conduct whatsoever. To draw a distinction with Mr. Warren whose sentence this court ultimately vacated, Mr. Warren shot two individuals including one at point-blank range with a shotgun. He had a history of shooting at a vehicle that his own sisters and his niece were in and despite all that history this court held that applying an upward variance all the way up to the statutory maximum in Mr. Warren's case did not sufficiently distinguish him from all other offenders who would also be subject to the same maximum. When you compare that to this case where granted there are prior firearms offenses but none of them involve any sort of violent conduct, I think it's clear that there can't be a sufficiently compelling reason in this case. The other factor here that it's pretty unusual and just kind of jumps out at you that this offense occurred just two days after Mr. Johnson was released from jail for a prior firearms offense. So he's only two days out of jail for a firearms offense and he commits another one and Judge Adams says well obviously the prior punishment didn't send a message to him and has not led him to change his conduct and I mean isn't that itself a compelling reason that he commits another firearm offense just two days after getting out of jail for a prior one? I don't think it's a sufficiently compelling justification for a maximum sentence. Also it's only a 14 month upward variance from 46 months to 60? Yeah it's a 14 month upward variance it's from 46 to 60. The lower the max the less room there is to distinguish is the problem you run into. That's also certainly true but I also think it's important to note that his offenses that we're talking about had already more than doubled. So I mean this is the this is the Booker problem. District Court judges are allowed to reject the guidelines. They're allowed to reject what the guidelines say the criminal history is so it really undermines what I think is intuitively a powerful argument. Your intuitively powerful argument is this seems like double counting. You get to use this for the criminal history it gets you up to this and then you raise 14 months based on the same things. See I don't think the guidelines account for committing the same or another firearm offense two days after getting out of jail. I don't think that's even calculated in the guidelines. It's just it's not there. It probably ought to be there but I mean this is this is something that's not accounted for. I think the question Judge Griffin though is even if the guidelines don't account for the two-day gap is that we give the judges discretion to impose a sufficient but reasonable and not no greater than necessary sentence under the circumstances. But I think the question here is is that two-day gap which is really the only factual difference that the District Court points to during the sentencing hearing. Is that enough to erase a distinction between Mr. Johnson and a criminal defendant with a category 6 criminal history? Is that enough to distinguish Mr. Johnson from a category 6 criminal history with multiple violent offenses? I don't think that's a judge's burden to know every one of these cases across the circuit and be able to slot it in just behind or just above based on I mean there's quite a bit of case law supporting the point I'm making. But Judge Sutton I would point you I guess to both Booker itself but also this court's decisions in both Poynter and Davis where I think part of what the Supreme Court contemplated in Booker was if we move from a mandatory guideline system to an advisory guideline system we have to rely on appellate review to iron out those types of sentencing differences and to ensure some form of consistency. I agree with you that putting defendants in a perfect row where everything is proportional is not only impossible but it's also not to what required. We also have to give the sentencing judges some discretion do we not? There has to be discretion but I think that the court also has to ensure that district courts preserve reasoned distinctions among defendants and in this case even taking into account the two-day time period which I would note there was five years in between his prior firearms conviction the one in July and then this one. So it's not as if every couple months he was being arrested for a firearms offense. Five right in his history? There were four prior. Why isn't it fair for a judge to say five is enough and this judge in particular was I think frustrated that prior sentences had been sort of lenient which is a matter of deterrence which is one of the factors why can't this judge think you've been five you haven't learned your lesson you haven't learned your lesson from short sentences so I'm gonna give you a longer sentence so hopefully you do learn your lesson there's not a sixth one. Judge Radler I think that deterrence is an important point but within that context it's important to note his longest prior sentence on the state court system was 18 months it appears that from the from the PSR he didn't even serve the full 18 months. That's sort of my point I think that was I thought that's a frustrated the district court. I'm trying to turn that point around I guess perhaps unsuccessfully but no but my point is if the longest prior sentence was 18 months and this district court judge decided to sentence all the way up to the maximum then one would expect to find an explanation somewhere in the sentencing transcript as to why a guideline sentence which was twice as long as his prior state court sentence wouldn't be sufficient to deter him but 60 months would. I actually think that that specific point favors a guideline sentence because there's no reason in the transcript why you would assume that if we double his prior sentence that wouldn't be enough. Wasn't he pretty critical of the state courts and the state sentences? Obviously there's a difference between state sentences and federal sentences to I thought the problem he was very frustrated with those sentences and wanted to send a message. He certainly was and that's actually another one of our arguments that his commentary about the state court system and why Mr. Johnson was released on community control or wasn't sentenced more harshly is actually an improper factor under this court's precedent. I would have put under the deterrence category which is he's had five or four priors and the punishment hasn't worked and so I this is where I think in this case needs to be done to deter him. It hasn't worked to prevent him from possessing firearms. By the same token he still has no violent history whatsoever and so I would still point out that when you sentence him to the statutory maximum you are quite literally grouping him with a category six criminal defendant with a second-degree murder conviction on his record. With a category six criminal defendant who has already accumulated two or three times the number of criminal history points including multiple firearms violations, all of those defendants will receive the same sentence if a district court is not required to draw those kinds of distinctions. The lower sentences that he received in state court actually should have opened up some room for the district court in this case to impose a within guidelines sentence and maintain a distinction between someone like Mr. Johnson with no violent history whatsoever and another defendant with the same number of firearms convictions but with a number of violent convictions on his record as well. That's simply not possible if the court is willing to accept the statutory maximum sentence on the facts of this case. We have judges all over the circuit with a lot of different philosophies about sentencing and I don't think it's unfair to this judge to say he is more likely to upward vary than some other judges but it also wouldn't be unfair to some other judges within the circuit to say they are more likely to downward vary. Do you think it's appropriate to apply the same level of scrutiny we're applying to this case to the downward variances? I must say a lot of them would fail the kind of distinctions and particularly matching them up with other cases. I would just say there's no way that can be justified and yet you said we don't hesitate to overrule variances up or down. I think that's not true. I think it's appropriate to do that. I feel like this would be a shift and there are judges with similar reputations in the other direction within the circuit and I think if we follow your approach here we have to apply the same medicine and there will be a lot of potential clients of yours down the road that will not be happy about your victory today. If I can break that into a couple different... There's just one point. You know the point. I think that there are two points though. I think one, I think that when this court has not removed sentences when the maximum removes the ability to distinguish between a less serious offender and a more serious offender. I don't think anyone can fairly look at this particular case and it that it jumps off the page as a statutory maximum. Many of those are 60-month cases where the statutory maximum is that low. I get it when the statutory max is 200. I get that but when it's low it leaves less room for distinctions. The second point I would make though is that we are to be clear we're not arguing for any... I didn't say that. I just said the same scrutiny you're asking for we'd apply in these other cases and I don't think most people think that's a good idea. I think that that's why though the empirical data in the brief is important. Seven of the eight judges are sentencing virtually identically. There's no inconsistency there whatsoever. If the court were to perform a similar study... No the court is this district court judges in this circuit as well as we do. I could write I'm not going to name names but it would not be hard to find a could do a similar statistic. There is one outlier and we tend to let those judges have discretion unless they really fumble the law or just the explanation makes zero sense. Otherwise that's the power they have as an Article 3 judge. I see that my time has expired if I could just briefly address the last point. I don't... I'm not disputing of course that this court knows district courts much much better than I do or that there will be variances among district court sentencing practices. But that specific language about avoiding excessive disparities in district court sentencing practices, it's present in Booker, it's present in Poynter, it's present in Davis. And so I do think it's fair to point out that if we are going to have meaningful appellate review of upward variances under an advisory guideline system, that is something that this court ultimately does have to do because the consequence of not doing it... Upward and downward. It's the same rules in both directions. We're in agreement on that. We're in agreement on that, Your Honor. My understanding though is that if the court were to examine downward variances, the chart that's in our brief, it would not be one graph that's substantially higher than other judges when the Sentence Commission studied that exact issue. What it found was that judges in general under an advisory guideline system are departing... are sorry varying downwards more often. So you may have more variances than you might expect in a mandatory guideline system, but they would be fairly consistent and uniform among district courts. One-way ratchet, I guess. Only twists in favor of defendants. Or it could speak to the consistency of the approach of those judges. Let me ask you one question. Sure. Does this rule mean that this district court can never vary upward? Or how are we supposed to apply this? You say not here, but when is this district court allowed to enhance a sentence? So I want to be very clear that we're not advocating a rule or anything like that. I think that the data that's in our brief is meant to support the legal argument. Mr. Johnson's primary argument is that there wasn't a compelling justification here. And when you look at the data, when a judge is varying upwards in one out of every five criminal cases, that certainly lends support to that legal argument. We're not arguing that... That's consistency. The judge thinks the criminal history scores always under-assess. And that's exactly what the Supreme Court says judges can do. They can disagree with the recommendation. I mean, that's the point. We're stuck with that, and they can go the other direction. It overstates. It is certainly an inconsistency, but I think that if the district court had a policy disagreement with the guidelines, that the criminal history always under-represented, then this court and the Supreme Court are both very clear that if it's based on a policy disagreement with the guidelines, that two things have to happen. One, that policy disagreement has to be spelled out in the sentencing transcript. So you can't just say there are several prior firearms convictions here, and two of them were very close together in time. The court would actually have to express exactly the disagreement that you're pointing to, which is I think that the criminal history score seriously understates everyone's likelihood of recidivism or whatever the case may be. The second thing that would have to happen, though, is that both this court and the Supreme Court have said if it's based on a policy disagreement, closer scrutiny applies. That is a form of heightened review, and the court has indicated that that's appropriate. So here, for example, the court would be allowed to figure out. We got it. So you get your full rebuttal, though. Great. Thank you. Good afternoon, Your Honors. May it please the Court. Margaret Cain on behalf of the United States, the appellee in this matter. The government would ask that this court affirm the district court sentence as a proper use of the court's discretion and uphold the 60-month sentence, which again was only a 14-month variance above the top of the range of the guidelines. As this court is well aware, it should use a deferential abuse of discretion standard when looking at a district court sentence, and will only disturb a sentence or will not disturb a sentence when the court looks at the 3553A factors and gives an explanation of why a variance is imposed unless there is an abuse of discretion. And there was no abuse of discretion made in this case. While the appellant argues that this is a mine run case, this certainly isn't a mine run defendant, as the district court laid out in detail during the sentencing hearing. Under the nature and circumstances of the offense, as this court has noticed and laid out, that this defendant was found in possession of a loaded firearm on two separate occasions following an arrest when he is prohibited from possessing a firearm in either of those days. Not only is he in possession of a firearm, but they're both .40 caliber firearms, which carried large-capacity magazines. On those dates, he also was in possession of narcotics. What's your response to your friend's argument that district court judges are allowed to disagree with what the criminal history suggests and that it understates what's going on, but that if they do that, they have to spell it out and kind of explain their policy disagreement. And if you don't do that, you run into this kind of double counting problem that the criminal history already accounts for these four priors, and then the judge mentions the four priors again, and you're kind of like, wait, why is that an explanation for going above unless you're going to spell out, I guess, what we call a policy disagreement with the criminal history counting. Is this a case where he spelled it out, and if not, why don't we have to require that? Well, I think the court did lay it out, why this defendant is different, why there's a compelling reason for the upward variance. And the case law is clear that this defendant is different is not an argument about the criminal history understating as a matter of policy. So you're basically answering my question by saying, well, he didn't do that and we're not relying on that ground? Is that what you're saying? No, I don't think that this judge disagreed with, I just think that he thought that this defendant, because of his history, that the sentence that his criminal history provided was not adequate, was not an adequate deterrence, was not an adequate punishment for what this defendant did based on the circumstances of the case. So what is it that's specific other than the two days, or is the two days specific other than the two days of the firearms? He has four prior firearms convictions. That's all in the criminal history? Well, also, not only just the convictions, but his long history of failing to be rehabilitated despite his numerous attempts at community control, community-based assessment, mental health assessment, and drug treatment. The district courts notes that this is one of the, I think, the most, a defendant that has had the most chances to correct his behavior that he has seen before him. I'm just losing you on this. I mean, that's what recidivism is. Every single prior event is an example of not learning your lesson. So I just don't know why that helps to explain something different about this defendant. Are we on the same page? Well, not only does he not rehabilitate himself, but he also has numerous violations. So he violates community control over 13 times based from all of his prior convictions. So not only does he have, was he not deterred, but he's also violating over and over and over, not taking advantage of the opportunities provided by the state courts multiple times. So I think that his history of violating community control, of violating while he's on community-based correction, shows that none of those sanctions were appropriate. And not only does that just go to deterring, but it goes to what is necessary to protect the public, to promote just punishment with this defendant, to provide adequate deterrence, and to reflect the serious nature of the offense, which are all factors that the court laid out to justify the upward variance and why this sentence was necessary in this case. I think it's important to also distinguish the Warren case, which this court recently ruled where the sentence was not upheld. In that case, the guideline range was 51 to 63 months. And so in that case, the court imposed a 120-month sentence, which was almost a sentence that was only 14 months above the top end of the guideline range. Also in Warren, the court stated that district courts are entitled to consider a defendant's criminal history in justifying the variance, even though it's already accounted in the sentencing guidelines. So that is still a factor that the court is able to consider when justifying why an upward variance is appropriate. And there's also a case law that lays out that a defendant's criminal history doesn't just go to the history and characteristics of the offense. It also goes to multiple factors, such as, again, the need to protect the public, what just punishment is. In many of our cases, it's so interesting to listen to the two of you, because you keep emphasizing 14 months, which sounds good, right? Because it makes it seem smaller in terms of the adjustment, and he keeps emphasizing all the way up to the statutory max. And do our cases say there's a distinction there, I mean, that we should pay attention to? Because, I mean, it does seem different how you phrase it. Well, the cases do, again, under ALEO, Poynter, cases highlighted by the appellant is that they look at how much of a variance it is. So, again, we only have a 20%... Excuse me. In ALEO, we have, it's two and a half times above. In Poynter, it's, you know, 206% variance. And there's cases that also talk about, well, of course, when you have, you know, there's going to be a higher percentage sometimes when the lower, when the range is so small, as the court has noted. So it might be a higher percentage, but when you look at the amount of time difference, it's smaller. So from your perspective, the statutory max is kind of irrelevant. It's really a percentage, is the way to think about it. I think more of when you look at the amount of the variance to determine how much of a compelling reason that you need. So most of the cases seem to a rigid mathematical formula stated in Gaul, but you look at the departure, how large the departure is to determine how strong the justification for the variance has to be. So again, the court laid out not only the nature and circumstances of the offense, which again, two firearms within a short time period, the history and characteristics of this defendant, including his four prior convictions for carrying firearms, his numerous times of violating the opportunities given to him while in community control over 13 times. The court also noted that although he doesn't have a history of violence, just by the nature of carrying firearms creates a heightened risk for violence. Also the defendant's history of drug trafficking and makes a reasonable inferences that those who carry firearms and deal narcotics often have those firearms for protection. Can I ask you about that point? I think your friend on the other side made this not this morning, but that the district court maybe went a little too far in sort of its characterization of the general state of criminal affairs in Cleveland with respect to guns and drugs and sort of further maybe this individual was caught up in that when maybe the record didn't quite support kind of the general characterization by the district court. Is there some, just how much flexibility does the district court have to sort of discuss general conditions in a community that may or may not be specifically relevant to the defendant before them? In the case of United States v. Ortiz-Rodriguez, the court noted that the court can consider the geography of where cases occur under the deterrence factor. So the court can definitely consider that these cases occurred in the city of Cleveland amongst high firearms offenses and drug trafficking. Again, it can also make the reasonable inferences, as this court has permitted in US v. Howder, as well as the recent Parrish case, that the district court can make reasonable inferences that those with the drug traffickers often carry firearms for protection, that a relevant concern for this judge is that this defendant committed the crime in Cleveland, Ohio, where there's shootings with drug traffickers, people with grievances, a rising concern given this defendant's history of carrying firearms and engaging in drug trafficking. And so the sections in the brief where I saw this argument laid out by your friend on the other side seemed to be some questions that the district court was asking of counsel, but when the district court actually got to imposing the sentence, did the district court rely on sort of the general conditions in the city or a general drug problem that might be impacting certain neighborhoods? I think that if the court more states relates this specific defendant, that his history of firearms and his history of drug trafficking, that that becomes relevant where it's occurring in the city of Cleveland. I don't think that he generally says that the defendant is responsible for all of these problems, but it just goes to the adequate deterrence of where the crimes occurred. And touching upon that, again, the court went through and gave its reasons under 3553A for imposing the variance. It did not engage in improper speculation. It made reasonable inferences based on known facts at the sentencing hearing, and as well as the empirical evidence laid out in detail by very upwards, more than other courts or more than other judges in the district or other judges across the area, doesn't mean that he abused his discretion in this case. And when you look at... The differences in sentencing practice are quite striking. If you look at the at the graph, page 43 of the brief, it shows that, I mean, if this is accurate, that Judge Adams varies upward in sentencing 20% of the time, while the other judges do it either less than 1% or maybe maximum up to 2%. I mean, it's such a disparity that, should we take that into account at all? The fact that there's such a difference with this judge as compared to the other judges in Northeastern Ohio. I mean, when you look at... That means that Judge Adams imposes a guideline sentence at least 80% of the time across the country. We really don't want a defendant justice to depend on the judge. We want it to depend on the facts and circumstances of his offense and the offender. We're trying to minimize wild disparities. Right, and I think that Judge Adams laid out why this particular defendant, given his particular history, his particular specific crimes, and his history of what he has done in this particular case, has justified it. In this particular case, it's justified. Maybe in other cases it would not be, but here we have to look at this particular case and not what he does in general. Correct, and you know, if we start... There's always, in every district across the country, there's going to be more lenient judges. There's going to be judges that impose heavier sentences. I'm kind of receptive to the idea that we have to kind of even it out a little bit. I mean, we do review sentencing practices here. Correct. Discretion, but there are limits, right? Well, but I think you would even out the results by taking an individualized look at each case. If Judge Adams, in the case that you review tomorrow, doesn't provide compelling reasons, then the case will be reversed and the sentencing will be remanded. We will look at this particular case. Out of curiosity, are you aware of statistics like this for the other districts within the circuit? I am not, Your Honor. Do you have any reason to guess, to question the accuracy of the chart, the statistics? The only thing that we did note is that appellate states that certain cases may not have been public, and so there may be a number of cases that weren't analyzed or weren't looked at, but we have no reason to doubt that the information provided is not accurate. Okay. Thank you. If there's no further questions, we would rest on our brief and ask that the sentence be affirmed. Thank you. Mr. Coyle. May it please the Court, I'll try not to abuse my time this time, but I'd like to make just a couple of points in response. The first is to illustrate exactly why I think a statutory maximum sentence in this case is inappropriate, hopefully with a very simple and straightforward example. If you imagine a defendant that's identical to Mr. Johnson in every way, same criminal history, same offense conduct, but on the date in question, rather than cooperating with authorities, he gives a fake name, he flees from the police, doesn't volunteer that he has a handgun tucked into his waistband. The way that the district court sentenced Mr. Johnson in this case, he literally cannot give the offender that didn't cooperate, that lied about his name, that didn't tell them that he had a gun, or that fled, a higher sentence. He gave him 58 months rather than the 60 months would probably be fine because it would be two more months for the statutory maximum. Is that your argument? No, I would still argue that the departing upwards to 58 months, when you consider the fact that he's only in Category 5 on the criminal history guidelines, and that the only real difference is the two-day point, it still wouldn't be enough. But all I'm pointing out is that... I must be missing your point because I guess when I hear you say that, I say to myself, I'm the district court judge, I'm thinking of going to the statutory max, and as I hear your argument, I'm supposed to say to myself, could someone do this in a worse way? And I would always be able to say, the longer I've been a judge, oh yeah, oh yeah. And that means I always stop below the statutory max? Is that what you're saying? I must be misunderstanding it. No, I don't think that you have to conclude that it's the absolute worst, but I think that Alejo Pointer and Warren... That's not what I said. I said lots of other ways to do this in a worse way, and there are always going to be lots of other ways. I don't think this case, though, is remotely close to being the worst way, and so I guess that's what I'm trying to point out, is that it doesn't belong in that worst category. Well, here's the way, maybe this is a better way to put my point. Statutory maxes mean district court judges can't draw distinctions between the person who deserves 60, 65, 100, 400. That's the whole point of it. It just collapses the whole thing, and by collapsing the accordion, you took out all those distinctions. So that's why I'm resisting this, but I'm also worried I'm missing something. No, Judge Sutton, I agree with that part of it, that the problem with the statutory maximum to some extent is that it erases the ability to distinguish past a certain point, but what I'm pointing out is that when you have a defendant like Mr. Johnson, whose Category 5, not Category 6, who has literally no history of violent offenses as troubling as the firearms convictions may be, that a statutory maximum sentence in his particular case quite literally erases the distinction between Category 5 and Category 6, or between a nonviolent offender and a violent offender. That's different than not being able to draw distinctions among the worst of the worst offenders who all deserve the statutory maximum. It's a very violent offenders, or offenders who have two or three times the number of criminal history points to land in Category 6. But to provide some examples, if I can briefly, and I see that my time has expired. I think we get the point. I just want to ask you something about the stuff on 4243. So what happened was people just went through the publicly available information, because I didn't understand this to be out there for the different district court judges, or for that matter, the different district courts in the circuit, am I right? That's not generally available, which you guys have been able to glean, or am I wrong? It is generally available. So we tried to do it in a way . . . And if people have done this, if people charted this out, oh, well, if you go to the Southern District of Ohio, for example, here's how the rankings work. Is that out there? That's not out there yet. The Sentencing Commission does gather the same data, but they don't report by individual judge. I thought that was quite a consequential point. There's a lot of secondary source material, law review articles and whatnot, worrying about disparities post-Booker, that point out that we don't . . . whatever reason, this information is not . . . the raw data is publicly available, but the kind of numbers that we generated are not publicly available. This was . . . I mean, there was no reason you would do this, but this wasn't subjected to fact-finding below. I'm just trying to figure out whether we should mention it, and if so, how we qualify it. So, it's all based on the public docket taken from Pacer or Bloomberg that students in our appellate clinic were able to look at. They were, say, judicially noticeable facts, but then it wasn't subjected to someone looking at it and saying, wait, there's a map there, or . . . Other than their instructors, myself and Mr. Paulson, that's correct. But it is all publicly available, and also just to double-check it, which is something that was obviously important to us. If you just do a . . . I think I asked the government if they questioned the accuracy, and I think she said no. So, I think we could . . . Honestly, I think Alexa search, just of even Sixth Circuit opinions, looking at upward variances, it returns a substantial proportion of cases from this particular sentencing judge. Oh, but . . . It's well in . . . The minute you say something like that, I'm now very anxious about what you did, because you realize how skewed a sample is of appeals. Well, but . . . It doesn't account for sentencings that grow out of a plea bargain, where you don't have a right to appeal. That's certainly true, but one thing we definitely did notice when we took on this project was that upward variances do almost always get appealed. And if they get appealed, a sentencing transcript is created. Once that happens, it's publicly available, and we can look at it. So, all of those cases are definitely included in our . . . You can waive your right to appeal . . . . . . dataset. . . . a plea bargain, no matter what happens. Sure, but I'm talking about cases in which a court like the district court here imposed an upward variance at the sentencing hearing. Okay, so I'm just . . . I'm not being critical at all. I'm just saying there's no way you know this. That's what I'm trying to figure. I'm just trying to point out that you have lots of plea bargains, plea deals, where you waive your right to appeal the sentence, no matter what happens, up or down. That could be one out of a thousand. I just have no idea, and I'm suspecting you don't either. No, I think . . . maybe there's a disconnect. We used the Lexis search of this court's appellate decisions just to sort of . . . to quality check, to make sure that if there was an appellate opinion about an upward variance that was from that district, that it was accounted for in our data. When we were doing that, we noticed that a disproportionate number of those cases were certainly from Judge Adams compared to all the other judges. For the actual data collection, though, we . . . as tedious as this was for the judges, we actually had them typing in case numbers sequentially in Pacer and Bloomberg to make sure that they hit every case. So there are cases where we can't publicly determine what the sentencing range was because there wasn't an appeal or there are documents missing. But that was true for all of the judges, so there's no reason why that would skew the numbers for any individual judge more or less than another. And it also wasn't that significant of a proportion of the total cases. So it's surprising what was publicly available. Okay. Well, I think we understand your arguments and maybe even most of the math. So thank you to both of you for the helpful briefs and for answering our questions. Mr. Coyle, I see you're court appointed and we're really grateful to you. Mr. Polson, the clinic, for all the work you put into this case. We're really grateful and I hope your client is as well. So thank you. Case will be submitted and the clerk may call the last case.